THE PRESIDENT, MANAGERS AND COMPANY OF THE
BALTIMORE AND YORKTOWN TURNPIKE ROAD *vs.*
JOHN H. LEONHARDT.

*Public carrier—Passengers—Mutual obligations—Contribu-
tory Negligence—Question for Jury—Negligence—Moving
about the floor of a Car in Motion.*

A public carrier does not warrant the safety of his passengers at all
events; nevertheless, as far as human care and foresight can avail,
he is bound to transport them safely.   On the other hand, the pas-
senger is bound to observe the reasonable rules and regulations
made by the carrier for insuring the safety of passengers, and, of
course, cannot be relieved from the necessity of using ordinary care
and prudence on his part to avoid danger.

Where the conduct of the plaintiff, who was injured while riding in
a car which was crossing a bridge, showed a reckless disregard of
his safety, it was the duty of the Court to declare, as matter of law,
that it was such negligence as entitled the defendant to a verdict;
but if this were not the case, it was proper to leave it to the jury
to decide whether he used such a degree of prudence as the occa-
sion required.

While it is a reasonable safeguard against accidents to forbid depar-
ture from a car while it is in motion, a passenger on the upper floor
of a horse car does not violate this regulation in walking, the car
being in motion, toward the rear end for the purpose of descending
to the lower platform.

A passenger is not guilty of inexcusable negligence in moving about
on the floor of a horse car while it is in motion; but it is a question
for the jury, whether, under the circumstances existing at the time,
it shows a want of reasonable care.

Whether it be practicable for a person of ordinary activity to descend
from the upper deck of a car without injury, while it is passing
over a bridge, if he be careful, is a question to be determined by
the jury, and not to be referred to the opinion of a witness.

APPEAL from the Baltimore City Court.

The case is sufficiently stated in the opinion of the Court. The reporting of the numerous exceptions—thirty-two in all—is deemed unnecessary. The jury rendered a verdict for the plaintiff for $4000.00, and judgment was entered thereon. The defendant appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*Arthur W. Machen,* and *I. Nevett Steele,* for the appellant.

*James Pollard,* and *H. W. Latane,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

The appellant is a corporation owning a railway on which cars for the transportation of passengers are drawn by horses. The railroad tracks traverse some of the streets of Baltimore and extend as far as Towson. While a passenger in one of the appellant's cars, the appellee sustained bodily injuries, and he has brought this suit for the recovery of damages. There is very little controversy about the facts of the case. The car, in which the appellee was a passenger, was of the kind usually called a double-decker, having two compartments for passengers, one above the other. Two of the appellant's tracks cross an iron bridge over Jones' Falls, one on the north side, and the other on the south side, where Hillen street meets Pleasant. The appellee was occupying a seat in the upper section of the car, at the extreme front nearest the driver. When the car reached Front street, about a hundred feet east · of the bridge, he rose from his seat and walked towards its rear end, for the purpose of descending to the platform, desiring to leave the car shortly after it should have passed the

bridge. While walking in this direction, with his back, of course, toward the driver, his right elbow came in violent contact with a portion of the bridge. He received an injury which is described by a medical witness, as a fracture of one of the inner bones of the arm, with considerable straining of the ligaments. The bridge is divided by a central truss or abutment, on each side of which the tracks run. It is stated in the evidence that each track is twenty-four inches from this central truss, and that the side of the ordinary standard car is from eleven to twelve inches distant from it; and that the upper deck or portion of a double decked car projects considerably over the lower portion, and its side is distant five inches from the truss. There is an iron plate or box on the side of the truss with some ornamentation which extends two inches and a quarter outwards. It will be seen that at this particular point, the distance is two inches and three-quarters to a perpendicular line, drawn from the floor of the upper deck at the side next the bridge. These measurements are given by different witnesses with slight variation, but the purposes of the case do not require a more minute examination of these details. Evidence was offered tending to show that the horses were trotting when the cars crossed the bridge, and an ordinance of the City of Baltimore was proved which enacted that horses should not be driven over any of the bridges of the city at a gait faster than a walk. There was also evidence of a notice forbidding passengers to get on or off the cars while they were in motion.

The mutual obligations, existing between passengers and the public carriers who transport them, have frequently been declared by the Courts. The carrier does not warrant the safety of his passengers at all events; nevertheless, as far as human care and foresight can avail, he is bound to transport them safely. On the other hand the passenger is bound to observe the reasonable rules

and regulations made by the carrier for ensuring the safety of passengers; and of course cannot be relieved from the necessity of using ordinary prudence and care on his part to avoid danger. There ought to be no difficulty in leaving these inquiries to the jury, where the evidence presents a proper case for their consideration. If indeed the conduct of the plaintiff below showed a reckless disregard of his safety, it was the duty of the Court to declare as matter of law, that it was such negligence as entitled the defendant to a verdict; but if this were not the case, it was proper to leave it to the jury to decide, whether he used such a degree of prudence as the occasion required.

When a person leaves a car while it is in motion, he is affected by its momentum, and incurs more or less danger. It, therefore, seems to us a reasonable safeguard against accidents, to forbid departure from the car at such a time. But the plaintiff was not violating this rule of the defendant when the accident occurred. He was walking on the upper floor of the car on his way to the place where he was to descend to the lower platform. When he reached this platform, he would be in a position to depart from the car; and he would then be required to see that it was stopped before he left it. But surely it is very unreasonable to deny to a passenger the right to move about on the floor of a car while it is in motion. And the concurring experience of the travelling public will show that such restraints are not imposed. It does not seem to us that we can declare that the act of the plaintiff was in law inexcusable negligence. It was a matter which the jury were properly required to consider in connexion with the circumstances existing at the time; and if they thought that it showed a want of reasonable caution, it was their duty so to find by their verdict. The prayers offered at the trial which refer to the duty of the defendant require a careful examination. The fifth on the part of

the defendant presents the most important question in the case. It is in these words: "The burden of proof under the issues in this case is upon the plaintiff to satisfy the jury that the injury which he complains of was produced by negligence on the part of the defendant, and if the jury do not find from the evidence that it was produced by negligence on the defendant's part, then their verdict should be for the defendant." The Court, by granting the plaintiff's first prayer, imposed on him the burden of proving that the injury was caused by the negligence of the defendant; and by granting the defendant's sixth, seventh, ninth and eleventh prayers, instructed the jury in very clear and positive terms that the plaintiff's right of recovery would be defeated, if there was on his part any want of ordinary care which directly contributed to produce the injury. The majority of the Court hold that inasmuch as these instructions presented the case to the jury as favorably for the defendant as it had a right to require, the rejection of this prayer is no cause for a reversal; although they hold that otherwise it ought to have been granted. The writer of this opinion thinks, nevertheless, that it is better to consider on its own merits the legal proposition involved, and herein he desires to be understood as expressing merely his own views. It may be said that the plaintiff is bound to establish by evidence all the material averments in his declaration, and as he has averred the defendant's negligence as the foundation of his action, the burden of proof is upon him to establish it. The proposition is most true, when abstractly considered. And yet abstract propositions most usually mislead and perplex the judgment, when they are stated without reference to the circumstances which justly modify their application. Let us consider the facts to which this prayer was applied. It was not controverted that the plaintiff had received an injury, while travelling as a passenger in one of the defendant's cars. Indeed, the very

terms of the prayer assume these facts; they do not ask that the jury are to find whether the plaintiff was injured; but proceeding on the basis that the injury had been inflicted, they seek to instruct the jury as to the rule, by which they are to decide the question of negligence. They say that, under these circumstances, the burden of proof is on the plaintiff. The contrary is the established law of this State. It being the duty of the carrier to convey his passengers safely, so far as it can be done by human care and foresight; when he has failed to convey them safely, it is held that he must show that he has exercised all that care and foresight which were required of him by his contract with them. In *Stokes vs. Saltonstall,* 13 *Peters,* 181, where an action was brought by the plaintiff to recover damages for injuries received by his wife, from the upsetting of a stage-coach, in which she was a passenger, the first instruction given by the Court at *nisi prius* stated that the facts that the coach was upset and the plaintiff's wife injured, were *prima facie* evidence that there was carelessness, or negligence, or want of skill on the part of the driver, and that they threw upon the defendant the burden of proving that the accident was not occasioned by the defendant's fault; this ruling was approved by the Supreme Court. In its opinion the Court refers with approbation to *Christie vs. Griggs, 2 Campbell,* 79, where it was held that the plaintiff made a *prima facie* case by proving his going on the coach, the accident, and the damage he had suffered. Both of these cases have repeatedly received the sanction of this Court. In *Worthington vs. B. & O. R. R. Co.,* 21 *Md.,* 275; where an injury to a passenger was caused by the displacement of a switch on the railroad track, the Court approves an instruction to the jury to the following effect, as stated in the opinion : "That the injury to the plaintiff was presumptive evidence of negligence on the part of the defendants, and it was incumbent on them to prove that they were

not negligent, in order to discharge themselves from liability." In *B. & O. R. R. Co. vs. State, use of Mahone*, 63 *Md.*, 135, an action for negligent killing, the plaintiff's second prayer maintains that if the deceased was killed while occupying the relation of a passenger, the presumption was that the injury resulted from the negligence of the defendant, unless the defendant showed that the injury did not result from its negligence, or that it could have been avoided by ordinary care on the part of the deceased. And this Court held that it was properly granted. The opinion of the Court refers with approval to *Christie vs. Griggs ; Stokes vs. Saltonstall ; Stockton vs. Frey*, 4 *Gill*, 406; *Carpue vs. London and Brighton R. R. Co.*, 5 *Queen's Bench*, 749 (48 *E. C. L. R.*,) ; *Skinner vs. London R. R. Co.*, 3 *Exchequer*, 786. In *Carpue's Case*, LORD DENMAN ruled at *nisi prius*, that the plaintiff proved a *prima facie* case of negligence against defendants, by showing that when the accident occurred, the train and railway were exclusively under their management. A rule *nisi* for a new trial, on the ground of misdirection having been obtained, at the argument in the King's Bench, the eminent counsel for the defendant gave up the point. In *Skinner's Case*, where one railroad train ran into another, and a passenger in the first train was injured by the accident, it was held that the fact of the accident was *prima facie* evidence of negligence on the part of the carrier. These citations show the state of the law in Maryland on the question presented by the fifth prayer of the defendant. We are aware that highly respectable authorities elsewhere hold otherwise. But we are bound by our own decisions, and, moreover, they are agreeable to reason. It was not the meaning of this prayer that the burden rested on the plaintiff to prove the accident, and the injury, and that he was a passenger. These facts were not contested at the trial, and yet they were all which it was necessary for the plaintiff to show for the purpose of cast-

ing on the defendant the burden of disproving negligence. The meaning of the prayer was, and its understanding by the jury neccessarily would be, that notwithstanding the fact of the injury, the burden of disproving negligence was not thrown on the defendant.

What we have said will sufficiently indicate our view on the various prayers, and on some of the questions presented by the exceptions to evidence. It being the duty of the defendant to observe the degree of care which we have stated, it could not exempt itself from this responsibility by showing that its tracks were located by the authority of the City of Baltimore. If the tracks were unsafe, it could not properly use them in the transportation of passengers. We do not understand, however, that it is alleged that the ordinary standard car could not safely pass over this bridge. The danger is supposed to arise from the fact that the double-decker projected so far beyond the limits of the ordinary car, as to leave too small a space between it and the truss of the bridge. And certainly the space, two inches and three-quarters, as stated in the evidence, was very small. It would be impossible to tell a jury that this was no evidence of negligence.

The first exception was taken to the refusal of the Court to allow the defendant to show that it was practicable for a person of ordinary activity to descend from the upper deck of the car without injury, while the car was passing the bridge, if he were careful. It might be practicable with a great degree of care, and yet it might be that the ordinary care which the law requires would be insufficient for the passenger's safety. But, independently of this consideration, we may remark that the question of care was a matter for the decision of the jury, and this offer was a reference of the question to the opinion of a witness. It is proper to lay before the jury all the facts, which are necessary to enable them to form a judgment on the matters in issue; and when the subject under investigation

requires special skill and knowledge, they may be aided by the opinion of persons whose pursuits or studies or experience, have given them a familiarity with the matter in hand. But where the question can be decided by such experience and knowledge as are ordinarily found in the common business of life, the jury are competent to draw the proper inferences from the facts without hearing the opinions of witnesses. In this case every fact and circumstance could readily have been proved, which showed whether the attempt to descend from the upper deck was safe or dangerous, wise or reckless, cautious or rash; and upon these facts the jury were required to form their judgment. There are, however, cases where all the facts cannot be detailed to the jury, which are necessary for a proper understanding of the subject. In speaking of a precipice, or of the condition of a road which is founderous or dangerous for travel, or of numbers, weights, heights, distances, and other like subjects, it would rarely be practicable for a witness to give the jury a satisfactory idea of the things described, without stating his opinion of them. But where the facts can be adequately exhibited to the jury, it ought to be done without admitting the evidence of opinion. These observations apply also to the second, third and eleventh exceptions. We think the evidence offered by the plaintiff in the fourth exception was unobjectionable. A mechanic was permitted to state what contrivance would have rendered the car safe in passing over the bridge. . It was an inquiry in which technical skill and knowledge were involved. We do not think that it was relevant to ask a witness whether an accident had ever before happened to a passenger on the upper deck of one of these cars. The jury was trying the merits of this particular accident, and none other. We therefore approve of the ruling in the eighth, fifteenth and twenty-second exceptions. In the fourteenth exception the Court refused to permit the defendant to ask the

President, &c. Balto. & Yorktown T. Road *vs.* Leonhardt.

driver of the car, whether, according to the best of his recollection, he had, on the day of the accident, observed his practice of bringing the horses to a walk in crossing the bridge. The witness had already testified that he had no recollection on the subject, except that it was his practice to go over the bridge carefully and slow. There was no error in this ruling. In the twenty-third exception, the defendant offered to ask a conductor as to the practice in reference to stopping the cars at the request of a passenger; and also as to the instructions which he had received as conductor; and as to the instructions to other conductors on the subject, combining all these particulars in one question. We do not see how the defendant can make its own instructions to its conductors a matter of defence. It is responsible for their conduct while acting in the course of their employment, even if they disobey their instructions; and if improper instructions are given, this fact may be shown adversely in an action against the employer. We have given our views on all the material questions in the case. With respect to others not adverted to, it is sufficient to say, that we have given them our careful attention, and agree with the learned Judge who tried the cause. We approve of all his rulings.

*Judgment affirmed.*

(Decided 15th July, 1886.)