FREDERICK STUMORE, trading as F. STUMORE & CO. *vs.* DAVID SHAW.

*Ship-owner—Ship-broker—Contracts for Shipments—Expert testimony—Exclusion of Evidence.*

The "Lilburn Tower" sailed from Newport, England, for Montreal, on the eleventh of June, 1884, loaded with a cargo of iron rails. The usual time for her voyage was from twelve to fourteen days. The ship-broker in Montreal, being advised of the probable date of her departure, made contracts with shippers of grain and cattle for a return cargo, for "June loading," by which was meant the shippers could cancel the contracts if the vessel was not ready to receive their shipments during the month of June. The steamer was delayed on her voyage, and did not arrive until the 28th of June; and not being ready to receive her return cargo during that month, the cattle men refused to ship at the contract rates, or to ship at all, except at a greatly reduced rate of freight. The broker accepted the reduced rate, which was the highest then obtainable in that port for such cargo. The owner refused to pay the broker for the services rendered and the advances made by him on account of the steamer, objecting that he made the contracts with too early a cancelling date, and was therefore chargeable with negligence. To sustain this objection the owner in an action against him by the broker,

called to the stand certain ship-brokers and shipping merchants, and putting to them the hypothesis that the " Lilburn Tower," sailed from Newport, England, for Montreal on the 11th of June; that it ordinarily required from twelve to fourteen days to make the passage; that upon her arrival she would have to discharge her cargo, and then be fitted to load grain in her hold, and cattle on deck,— proposed to ask each of them whether or not, under such circumstances it would have been reasonably prudent for a broker, as consignee of said vessel, to engage outward cargo from Montreal for " June loading ; " would it or not be prudent for such a broker to engage grain and cattle for " June loading ; " and whether or not it was possible for that vessel to be loaded and sail from Montreal in June ? HELD :

That the questions were not allowable, it not being a case for the admission of expert testimony.

Expert testimony is not admissible upon a question which the Court or jury can themselves decide upon the facts. If the relation of facts and their probable results can be determined without special skill or study, the facts themselves must be given in evidence, and the conclusions or inferences must be drawn by the jury.

The telegrams by cable and letters by mail between the owner of the vessel and the ship-broker had been offered in evidence, subject to exception, and, after the testimony had been closed, the ship-broker, the plaintiff, prayed the Court to withdraw from the consideration of the jury all of the letters which he received from the defendant, the owner, after the sailing of the vessel from Montreal. This prayer the Court granted, and on appeal this ruling was affirmed, the appellate Court holding that the duty of the plaintiff had been discharged when the vessel left Montreal homeward bound, and his liability for negligence, if he had been guilty of any, was then fixed, and neither his rights nor his liability could be affected by any communication he may have subsequently received from the defendant.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J.

*Robert H. Smith*, and *Alfred S. Niles*, for the appellant.

These shipping contracts, dependent on so many contingencies, and wherein so many elements may enter, and where the ordinary juror, without special knowledge of the subject, would be utterly without information which would enable him to arrive at a correct verdict, are just the class of cases in which experts ought to be called in to aid the Court and jury in arriving at correct conclusions, it being, in the language of the United States Supreme Court, a "subject upon which the jury are not as well able to judge for themselves as is the witness." *Transportation Line vs. Hope*, 95 *U. S.*, 297.

Expert evidence is admitted on all questions pertaining to the case, whenever the jury are not themselves as well able to judge as is the witness. "It is not an objection that the question involves the point to be decided by the jury." 2 *Poe's Pleading and Practice*, sec. 271; *City of Washington*, 92 *U. S.*, 39; *Transportation Line vs. Hope*, 95 *U. S.*, 297; *Davis vs. State*, 38 *Md.*, 15, 37.

Our witnesses were experts. Indeed the Court below admitted their expert characeter, although holding that the questions could not properly be put to an expert. An expert, is a person having special knowledge and skill in the particular calling to which the inquiry relates, or as expressed by Shaw, C. J., in *Dickenson vs. Fitchburg*, 13 *Gray*, 555: "a person of large experience in any particular department af art, business or science."

Their opinions are not confined to matters or questions that they have actually seen or heard of, but if they have acquired knowledge by experience of similar transactions, which gives them peculiar knowledge of the matter in controversy, they may give their opinion. *Hills vs. Home Insurance Co.*, 129 *Mass.*, 345; *Alfonso vs. U. S.*, 2 *Story*, 421.

The Court erred in excluding the letters from the defendant to the plaintiff, which were received by him after the

sailing of the two ships from Montreal. The whole correspondence was asked for, was actually filed by the plaintiff himself and ought to have been admitted. *Roe vs. Day,* 7 *Carr. & P.,* 705 ; 2 *Wharton on Evidence, sec.* 1103 ; *Downer & Co. vs. Morrison,* 2 *Gratt.,* 250.

Where there has been slight negligence or slight omissions of duty in an agent's conduct of the principal's business, there may be a proportionate diminution of commissions in the discretion of the jury ; but where the agent is guilty of· gross negligence or gross misconduct or gross unskilfulness in the business of his agency, he will forfeit all his commissions. *Story on Agency,* (*9th Ed.,*) *sec.* 331; *White vs. Chapman,* 1 *Starkie,* 113 ; *Denew vs. Deverell,* 3 *Camp.,* 452 ; *Dodge vs. Tileston,* 12 *Pick.,* 328 ; *Hoyt vs. Shipherd,* 70 *Ill.,* 309.

If the plaintiff, acting as defendant's agent, received certain instructions as to the cargo and the rates of freight which he should accept—if he did announce himself as having obtained such cargo at about these rates—and if the defendant relying with good reason on such announcement was influenced in his conduct thereby, we think that on the principle of the cases cited below, the defendant had a right to hold the plaintiff to make good the contracts which he induced the defendant to believe were in existence, until it was too late for the defendant to alter his plans, even although it be not shown that such alteration of plans would have produced a different or more beneficial result. *Callander vs. Oelrichs,* 5 *Bing., N. C.,* 58 ; *Williams vs. Higgins,* 30 *Md.,* 404 ; *Arrott vs. Brown,* 6 *Whart.,* 9 ; *Johnson vs. N. Y. C. R. R.,* 33 *N. Y.,* 610, 612 ; *Howe vs. Sutherland,* 39 *Iowa,* 484 ; *Hardy vs. Chesapeake Bank,* 51 *Md.,* 590.

*John H. Thomas,* for the appellee.

The *opinions* sought to be introduced, would not have been admissible from any witnesses. The jury were as

competent as any witnesses could be, to draw intelligent and correct conclusions from any state of facts, on which such opinions *could* be founded. *Rogers on Expert Testimony*, 8, 9, 11, 12, and 13; *Milwaukee R. R. Co. vs. Kellogg*, 94 *U. S.*, 472; *Schmieder vs. Barney*, 113 *U. S.*, 645; *Lawson on Expert Evidence, Rule* 6, *p.* 33, *Rule* 37, *p.* 203.

Courts have shown no disposition, of late, to extend the field for the examination of supposed experts, or to enlarge the circumstances under which their opinions may be given to a jury.

" Experience has shown that opposite opinions of persons professing to be experts may be obtained to any amount; and it often occurs that, not only many days, but even weeks, are consumed in cross-examinations, to test the skill or knowledge of such witnesses and the correctness of their opinions, wasting the time and wearying the patience of both Court and jury, and perplexing, instead of elucidating, the questions involved in the case." *Winans vs. New York & Erie R. R. Co.*, 21 *How.*, 101.

" Perhaps the testimony which least deserves credit with a jury is that of *skilled witnesses*. These gentlemen are usually required to speak, not to facts, but *opinions ;* and when this is the case, it is often surprising to see with what facility and to what an extent their views can be made to correspond with the wishes or the interests of the parties who call them. They do not, indeed, wilfully misrepresent what they think, but their judgments become so warped by regarding the subject in one point of view, that, even when conscientiously disposed, they are incapable of expressing a candid opinion. Being zealous partizans, their belief becomes synonymous with faith, as defined by the Apostle, and it too often is but the substance of things *hoped for*, the evidence of things *not* seen." To adopt the language of Lord CAMPBELL, " skilled witnesses come with such a bias on their minds to support the cause in which they are embarked, that hardly any weight should be given to their evidence." 1 *Taylor on Ev., p.* 73, *sec.* 50, (*6th Ed.*)

" Engineers are more frequently like counsel for their employers, than like witnesses giving their real opinions on oath." *Wills on Circumstantial Evidence,* (5th Amer. Ed.,) 103 ; *Dickson on the Law of Ev.*, 996.

MILLER, J., delivered the opinion of the Court.

The plaintiff in this case was a ship-broker in Montreal, and the defendant a ship-owner in London. The suit is to recover for services rendered and advances made by the plaintiff in the disbursement and on account of two Steamships the " Lilburn Tower" and " Maulkins Tower " consigned to the plaintiff by the defendant in June, 1884. The amount claimed, including commissions, was £646 9s. 5d. For this sum the plaintiff drew a draft on the defendant which the latter refused to accept or pay. The declaration contains the common counts only. The plea was *non-assumpsit,* and the verdict was in favor of the plaintiff for the full amount of his claim.

The steamers were sent to Montreal, the one laden with iron rails and the other in ballast, with the expectation of receiving return cargoes, chiefly of cattle and grain ; and the defence set up at the trial, stated in general terms, was misconduct, neglect of duty, and violation of instructions on the part of the plaintiff, in regard to procuring this freight in Montreal.

There were several exceptions to the rulings of the Court as to the admissibility of evidence, and there was one as to instructions to the jury. The latter will be noticed first.

1st. There is no evidence legally sufficient to show that the defendant was induced to send either of his steamships to Montreal by any *untrue* representations made to him by the plaintiff. Hence there is no error in granting the plaintiff's first prayer, and no objection was made to it by appellant's counsel in argument.

As to the defendant's three prayers which were rejected, it appears to us plain that discussion of the legal proposi-

tions they contain, is needless in view of the instructions given by the Court, and the verdict of the jury under them. The Court of its own motion instructed the jury "that if they find that the plaintiff in the transaction of the defendant's business violated his instructions or failed to give him timely information of facts important for him to know, or to exercise that degree of fidelity, skill and diligence which similar agents ordinarily employ, or might reasonably be expected to employ under similar circumstances, and that the defendant suffered loss in consequence thereof, then the defendant is entitled to have recouped from the plaintiff's claim such damages, if any, as the defendant may have actually sustained thereby." This placed the case before the jury in a light more favorable to the defendant perhaps than the proof warranted, and the plaintiff excepted to it on that ground. The Court however adhered to the instruction, and the plaintiff thereupon offered his third prayer, to the effect, that if the jury' think they ought to make any deduction by way of damages from the plaintiff's claims it should only be for such as the defendant may have actually sustained by violation of instructions or neglect of duty as stated in the Court's instruction, if they believe there was any such violation or neglect, and such amount if any, as they may think ought to be deducted from the commissions charged. The Court granted this prayer also as an addition to or in explanation of its own instruction, and being thus instructed the jury by their verdict made no abatement whatever from the plaintiff's claim but gave him the whole of it with interest. From this the inevitable conclusion is, that they found from the evidence that there had been in fact no neglect or violation of instructions by the plaintiff, and that he had transacted the defendant's business with reasonable skill, fidelity and diligence. This verdict exonerates the plaintiff from all blame, and that being the state of the case there is no occasion to consider the question whether if there had been

any violation of instructions, or gross negligence or mis-conduct on the part of the agent, the jury would have been bound to reject his commissions *in toto*, and be at liberty also to recoup the damages suffered by reason of such negligence and misconduct, as stated in the defendant's first and second prayers, or whether the proposition con-tained in his third prayer is correct. In view of this finding by the jury these legal propositions become mere abstractions. The appellant suffered no injury by their rejection even if.they may have been (a point on which we express no opinion) abstractly right.

2nd. The "Lilburn Tower" sailed from Newport, Eng-land, for Montreal, on the 11th of June, loaded with a cargo of iron-rails. The usual time for her voyage was from twelve to fourteen days. The plaintiff being advised of the prob-able date of her departure made contracts in Montreal with shippers of grain and cattle for a return cargo, "*for June loading*," by which is meant that the shippers could cancel the contracts if the vessel was not ready to receive their shipments during the month of June. The steamer was delayed on her voyage and did not arrive until the 28th of June, and not being ready to receive her return cargo during that month the cattle men refused to ship at the contract rates, or to ship at all except at a greatly reduced rate of freight. The plaintiff accepted the reduced rate, but the undisputed testimony is, that he obtained the highest rate *then* obtainable in that port for such cargo. The objection of the defendant is, that the plaintiff made these contracts with *too early a cancelling date* and was therefore chargeable with negligence. To sustain this objection he called to the stand several Baltimore ship-brokers and shipping merchants, who were acquainted with and had had experience in such business in Baltimore, and putting to them the hypothesis that the "Lilburn Tower" loaded with iron-rails sailed from Newport, Eng-land, for Montreal on the 11th of June, that it ordinarily

requires from twelve to fourteen days to make the passage, that upon her arrival she would have to discharge her cargo and then be fitted to load grain in her hold and cattle on deck, proposed to ask each of them whether or not under such circumstances it would have been 1st, *reasonably prudent* for a broker as consignee of said vessel to engage outward cargo from Montreal for June loading? 2nd, would it or not be *prudent* for such a broker to engage grain and cattle for June loading? and 3rd, whether or not it *was possible* for that vessel to be loaded and sail from Montreal in June? Upon objection made by the plaintiff, the Court refused to allow these questions to be put, and to these rulings the defendant excepted.

There is a general concurrence of authority and decisions in support of the proposition that expert testimony is not admissible upon a question which the Court or jury can themselves decide *upon the facts;* or stated in other words, if the relation of facts and their probable results can be determined without special skill or study, the facts themselves must be given in evidence, and the conclusions or inferences must be drawn by the jury. *Lawson on Expert and Opinion Evidence*, 203; *Rogers on Expert Testimony*, 11. And this Court in considering this question in a recent case, has said: "It is proper to lay before the jury all the facts necessary to enable them to form a judgment on the matters in issue; and when the subject under investigation requires special skill and knowledge, they may be aided by the opinions of persons whose pursuits or studies or experience have given them a familiarity with the matter in hand. But where the question can be decided by such experience and knowledge as are ordinarily found in the common business of life, the jury are competent to draw the proper inferences from the facts without hearing the opinion of witnesses." *Balto. & Yorktown Turnpike Road Co. vs. Leonhardt*, 66 *Md.*, 77, 78. In our opinion the present case is within the rule thus stated.

If, in addition to the facts stated in the hypothetical question, it had been proved how long it usually took to unload such a cargo, and to fit up a vessel for the reception of grain and cattle, and what were the facilities for such unloading and refitting in Montreal, the jury, with these facts before them, would have been quite competent to determine whether it was prudent or reasonably prudent for the plaintiff to make the contracts complained of, and whether it was possible for the steamer to have been loaded and to have sailed in June. These additional facts could have been easily proved, so as to place all the circumstances in view of which the plaintiff acted, clearly before the jury, and if that had been done they would have required no aid from the *opinions* of others in drawing the inference as to whether he acted prudently or otherwise. No question of science or nautical skill was involved, nor did it require a course of previous habit or study in order to attain sufficient knowledge to answer these questions. Waiving then consideration of other reasons urged in argument in support of these rulings, we affirm them on the simple ground that this is not a case for the admission of expert testimony.

3rd. The remaining question arises thus: The telegrams by cable and letters by mail between the parties had been offered in evidence *subject to exception,* and after the testimony had been closed the plaintiff prayed the Court to withdraw from the consideration of the jury *all of the letters* from the defendant to the plaintiff, which were *received* by the plaintiff after the sailing of the two ships from Montreal. This prayer the Court granted, the defendant having declined a modification thereof embracing similar letters written by the plaintiff. The undisputed facts are, that both vessels were loaded and sailed on the 10th of July. At that time everything in regard to providing them with cargoes had been done and the vessels had left Montreal homeward bound. The plaintiff

Colema ⸱ ⸱ ⸱ garth and Bradley.

⸱⸱⸱⸱ not then rec⸱⸱⸱ ⸱⸱⸱⸱ in obedience to any letter he may have afterwards received from the defendant. His ⸱⸱⸱y had then been discharged, and his liability for negligence, if he had been guilty of any, was then fixed, and neither his rights nor his liability could be affected by any communication he may have subsequently received from the defendant. The simple statement of the facts places the correctness of this ruling beyond the pale of argument. It is not a case where the rule that, where the whole of a correspondence is called for the whole of it must be admitted, has any application.

*Judgment affirmed.*

(Decided 17th November, 1887.)