■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SALVATORE DE SARNO, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Kreindler, J.), rendered April 15, 1981, convicting him of murder in the first degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Judgment affirmed.

The defendant, a parolee, fired six shots at Police Officer Cecil Sledge during a traffic stop at a busy intersection. One bullet struck Officer Sledge's bullet-proof vest, fracturing a rib. Another bullet penetrated Officer Sledge's face, fractured his jawbone, severed the left common carotid artery and the jugular vein, and became lodged in the centrum, the heavy bone protecting the spinal cord. This bullet did not sever the spinal cord. Two other bullets entered the officer's thigh. After the shots were fired, the defendant backed his vehicle over the fallen officer's body in order to drive around the parked patrol

car. The officer's body became wedged under the front wheel and was then dragged at high speeds before the defendant crashed his vehicle into a parked car while attempting to negotiate a right turn. Officer Sledge's gun, which was recovered from the scene of the shooting, had been fired twice. The defendant had a gunshot wound in his left shoulder and in his back, just above the right shoulder blade.

At trial, the defendant raised the defense of justification (see, Penal Law § 35.15 [2] [a]). In addition to alleging an acrimonious relationship with Officer Sledge, the defendant testified, in contradiction to the prosecution's eyewitnesses, that Officer Sledge drew his gun and fired the first shot. To corroborate his claim that the decedent must have fired first, the defendant focuses upon one prosecution witness's testimony that the first bullet the defendant fired was directed at the officer's face, and the defendant's expert witness's testimony that the bullet which penetrated the officer's face and lodged in the centrum would have instantly paralyzed the officer. In contrast to this testimony, another eyewitness stated that the defendant's first shot was fired at the officer's chest, and two of the prosecution's expert witnesses testified that only the transection of the spinal cord causes immediate paralysis. According to these experts, an individual who sustained wounds similar to those caused by the bullet which penetrated Officer Sledge's face and lodged in the centrum may be capable of performing voluntary acts for 30 to 60 seconds after the bullet's impact and before losing consciousness. After reporting a deadlock and being given a modified Allen charge, the jury convicted the defendant of murder in the first degree and criminal possession of a weapon in the second degree.

Penal Law § 35.15 (2) provides that a person may use deadly physical force upon another person when he reasonably believes that such person is using or is about to use deadly physical force against him and he cannot with complete safety avoid it by retreating. When a defendant asserts a claim of justification, his state of mind is the crucial inquiry (People v Miller, 39 NY2d 543; People v Desmond, 93 AD2d 822). The jury must consider the defendant's subjective belief as to the imminence and gravity of danger and whether this subjective belief was reasonable (People v Wagman, 99 AD2d 519; People v Desmond, supra).

The defendant contends that the charge to the jury on justification deprived him of a fair trial because the Trial Judge, on occasion, erroneously referred to an objective rather

than a subjective standard for evaluating the defendant's behavior. The defendant never objected at trial to the court's charge on justification. Consequently, the issue has not been preserved for appellate review (CPL 470.05 [2]; *People v Gonzalez,* 80 AD2d 543; *People v Doctor,* 98 AD2d 780).

In any event, were we to review the merits in the interest of justice, we would conclude that the charge as a whole does not warrant reversal. Unlike the charge in *People v Wagman (supra),* which failed to adequately convey to the jurors the subjective standard, the trial court in this case properly instructed the jury to place itself figuratively in the defendant's shoes and to determine the reasonableness of the defendant's belief from the facts and circumstances as the defendant perceived them. Aside from two erroneous references to the standpoint of an ordinary reasonable man in the defendant's situation, the trial court, throughout the course of the charge, accurately stated several times the correct legal standard *(see,* 1 CJI [NY] 35.15 [2] [a] p 867), including a verbatim reading of the statutory language. Thus the charge as a whole adequately conveyed the proper standard to the jury.

After the defendant had completed his direct testimony, the court conducted a voir dire, out of the jury's hearing, to determine the extent to which expert psychiatric testimony regarding the defendant's state of mind would be admissible. A psychiatrist proposed to testify that the defendant had a "personality disorder with explosive and paranoid features". According to the psychiatrist, a person with this personality disorder is more prone than the ordinary person to respond to threats and stresses with unpredictable outbursts of anger and violence and has a pervasive attitude of suspicion, i.e., a sense that the environment is a dangerous and hostile place. The psychiatrist opined that just before the shooting, the defendant "was convinced that Officer Sledge was going to kill him". The court ruled that all the proposed testimony would be permitted except for the psychiatrist's opinion of the defendant's belief at the time of the shooting. The defendant took exception to this ruling and decided not to offer any of the psychiatrist's testimony. Since his state of mind and sense of fear was critical to a justification defense *(see, People v Miller,* 39 NY2d 543, *supra),* the defendant contends that the opinion testimony of his expert on this key issue was erroneously circumscribed because the trial court applied the wrong standard in determining its admissibility.

The record does not support the defendant's contention that

the limitation imposed by the trial court was predicated upon the erroneous ground that it had no discretion to admit opinion testimony pertaining to an ultimate issue of fact in the case *(cf. People v Cronin,* 60 NY2d 430).

Admissibility of opinion testimony pertaining to an ultimate question within the jury's province turns on whether, given the nature of the subject, "the facts cannot be stated or described to the jury in such a manner as to enable them to form an accurate judgment thereon, and no better evidence than such opinions is attainable" *(Van Wycklen v City of Brooklyn,* 118 NY 424, 429; *Noah v Bowery Sav. Bank,* 225 NY 284, 292). Where the conclusions to be drawn from the facts "depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence", opinion testimony of an expert witness is admissible *(Dougherty v Milliken,* 163 NY 527, 533; *De Long v County of Erie,* 60 NY2d 296). Furthermore, the admissibility and bounds of expert testimony are addressed primarily to the sound discretion of the trial court. As the Court of Appeals noted in *People v Cronin* (60 NY2d 430, 433, n 2, *supra),* questions to an expert which are framed in terms of the "intent" to commit the crimes charged may be properly excluded in the exercise of the trial court's discretion because the expert's perception of that term might differ dramatically from the statutory definition. Here, it is apparent from the colloquy in the record that the trial court's preclusion of the psychiatrist's testimony as to his opinion on the defendant's subjective belief as to the imminence and seriousness of the danger and the reasonableness of said belief was predicated upon the same concern voiced by the Court of Appeals in *People v Cronin (supra).*

We are cognizant of the recent trend of decisions receiving in evidence expert testimony concerning complex psychological and social phenomena to help substantiate a defendant's claim of justification *(see, e.g., People v Fisher,* 73 AD2d 886, 887-888, *affd* 53 NY2d 907 [phenomenon of repression]; *People v Reid,* 123 Misc 2d 1084, 1085-1088 [rape trauma syndrome]; *People v Benjamin R.,* 103 AD2d 663, 668-670 [untimely disclosure of child sexual abuse]; *People v Torres,* 128 Misc 2d 129 [battered woman's syndrome]; *but see, People v Hamel,* 96 AD2d 644). Nevertheless, the trial court did not abuse its discretion in this case when it precluded the psychiatrist from stating his opinion that at the operative moment the defendant "was convinced that Officer Sledge was going to kill him". The court ruled that it would permit the expert to disclose in detail his diagnosis of the defendant, the character-

istics of the defendant's personality disorder, and the impact such a personality disorder has upon a person's perception, state of mind and behavior. That background data and the explanation of the defendant's alleged "personality disorder with explosive and paranoid features" would have furnished a sufficient basis to aid the jury in forming an accurate conclusion as to the defendant's subjective belief and the reasonableness of the belief. Furthermore, the defendant's own testimony from the stand concerning his subjective belief was also significant evidence on the issue. In any case, when the court's ruling as to the testimony by the defendant's expert it was willing to admit is considered in conjunction with the defendant's own testimony, we cannot conclude that the limitation of the expert testimony would have affected the verdict *(see, People v Crimmins,* 36 NY2d 230), and it certainly did not deprive the defendant of a fair trial. Lazer, J. P., Mangano, Gibbons and Rubin, JJ., concur.