542 A.2d 1258

**Henry Bradford SIMMONS a/k/a Abduell Qadir Nazzag**

v.

**STATE of Maryland.**

**No. 51, Sept. Term, 1986.**

Court of Appeals of Maryland.

June 28, 1988.

Victoria S. Keating, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Valerie V. Cloutier, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Submitted to MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH * and McAULIFFE, JJ., and SMITH (retired) Specially Assigned.

COLE, Judge.

Henry Simmons was convicted of second degree murder by a jury in the Circuit Court for Baltimore City. The Court of Special Appeals affirmed. *Simmons v. State*, 66 Md.App. 629, 505 A.2d 577 (1986). This Court subsequently granted Simmons's petition for a writ of certiorari in order to decide whether the trial court properly excluded expert testimony regarding Simmons's subjective belief that self-defense was necessary to avoid imminent death or serious bodily injury.

Simmons, accused of murder, raised the defense of imperfect self-defense. His particular contentions before us arise from the decision of the trial judge to exclude the testimony of a proposed expert defense witness, Dr. Ellen McDaniel, a psychiatrist. Prior to the selection of the jury, the State made a motion *in limine* that the testimony of Dr. McDaniel be excluded from the trial. At that time, the trial judge postponed ruling on the motion until the jury had been selected but prior to opening statements.

The motion was subsequently addressed while the jury recessed for lunch. The State argued that the proposed testimony should be excluded because the defendant had abandoned the defense of insanity, and thus, Dr. McDaniel's testimony was allegedly only relevant to diminished capaci-

---

* COUCH, J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

ty which is not a viable defense under Maryland common law. Further, the State argued that the admission of any expert testimony regarding the nature of Simmons's subjective beliefs at the time of the alleged crime would impermissibly impinge on the jury's function.

In response, Simmons argued that the State had misconstrued the nature of Dr. McDaniel's testimony. Simmons emphasized that he was not offering Dr. McDaniel's testimony to support a diminished capacity defense. Rather, the testimony was offered to aid the jury in deciding whether Simmons acted with the requisite state of mind to establish the defense of imperfect self-defense. Thus, Simmons proffered that he would testify that at the time of the homicide he believed that use of force was necessary to prevent imminent death or serious bodily harm; Dr. McDaniel would then take the stand and testify that her examination of Simmons revealed that he did *in fact* have such a subjective belief. The trial judge ruled that he would not allow Dr. McDaniel to testify in this manner because the function of the jury would be usurped.

At this point, Simmons made a second proffer that Dr. McDaniel would only testify that Simmons's asserted subjective belief would be consistent with his psychiatric profile. The trial judge, however, reaffirmed his previous ruling, indicating that he would allow no one to testify as to what Simmons's thought processes were at the time of the homicide.

Following this ruling, the trial proceeded and Simmons never called Dr. McDaniel as a witness. Nor did he raise the issue of the admissibility of Dr. McDaniel's testimony during the trial. As a result, the State argues that the issue relating to the exclusion of Dr. McDaniel's testimony was not properly preserved for appeal. In particular, the State argues that the grant or denial of a motion *in limine* does not, of itself, constitute reversible error, and that the trial judge can only make a final ruling as to the admission or exclusion of evidence after the trial has begun.

We address this issue before determining whether the trial judge properly excluded the testimony of Dr. McDaniel.

The Court of Special Appeals found that "Appellant proffered the testimony both in a motion *in limine* and after the jury was sworn," *Simmons*, 66 Md.App. at 631 n. 1, 505 A.2d at 577 n. 1, and accordingly concluded that the issue was preserved for appeal. We agree that the issue is preserved for appellate review although our reasoning is somewhat different from that of the intermediate appellate court.

In *Prout v. State*, 311 Md. 348, 535 A.2d 445 (1988), this Court faced a similar procedural setting.[1] The trial judge in that case, in response to a motion *in limine,* ruled that certain prior convictions would not be admissible for purposes of impeaching the credibility of the State's witness. In accord with the trial judge's instructions, defense counsel questioned the witness so as to avoid bringing the prior convictions to the attention of the jury. Defense counsel never reasserted the issue of the admissibility of the prior convictions after the ruling on the motion *in limine.*

On appeal the State argued that a ruling on a motion *in limine* is insufficient to preserve an issue for appellate review. Rather, the State suggested that the attorney seeking the admission of evidence must proffer the evidence at the point at which such evidence would ordinarily be offered at trial. We agreed that "[i]f the trial judge admits the questionable evidence, the party who made the motion ordinarily must object at the time the evidence is actually offered to preserve his objection for appellate review." *Id.* at 356, 535 A.2d at 449.

---

**1.** *See also Watson v. State,* 311 Md. 370, 535 A.2d 455 (1988) (Issue concerning the admissibility of a prior conviction for impeachment purposes was preserved for appellate review, notwithstanding counsel's failure to object when the witness was questioned about the prior conviction, because the trial judge reiterated his pretrial ruling admitting the conviction immediately prior to the examination of the witness).

We noted, however, that the circumstances may be different when the trial judge grants the motion and excludes the proffered evidence. In particular, we ruled that Prout did not have to renew his offer of the evidence during the trial because the trial judge had intended that his ruling granting the motion *in limine* be the final word on the matter. *Id.* at 358, 535 A.2d at 449–50. That the ruling on the motion was intended to be final was evident since the trial judge had directed defense counsel to avoid raising the issue during his cross-examination of the witness.

We believe that the trial judge in the case *sub judice* also intended that his ruling on the motion *in limine* be final as to the admissibility of the proposed expert testimony. Defense counsel advised the court on the record as to the substance of the proposed testimony and its relevance. The State neither requested nor did the court require that defense counsel further particularize the proffer or produce Dr. McDaniel so that her proposed testimony could be elicited in question and answer form. Rather, the trial court apparently misperceived the thrust of the proffer, as the defense had modified it during colloquy, and understood the proffer to be that Dr. McDaniel would testify that Simmons in fact honestly held a certain subjective belief. But the court was "not prepared to let her make that ultimate finding." The trial judge unconditionally ruled that he would not "let anybody tell this jury what this man's thought processes are."

To require defense counsel, under these circumstances, to make a more specific proffer or to offer the evidence again during the trial in order to preserve the issue for appellate review is unwarranted and would unduly interfere with the orderly progression of the trial. As we regard the trial judge's ruling on the motion *in limine* to have been a final ruling, we conclude that the issue is properly preserved for review.

We now direct our attention to whether the trial judge impermissibly excluded the psychiatric testimony of-

fered by Simmons in support of his claim of imperfect self-defense. The intermediate appellate court affirmed the exclusion of this evidence on the grounds that "[t]he evidence appellant sought to introduce went to his capacity or diminished capacity to act in an objectively reasonable manner. This evidence is not admissible in Maryland [under *Johnson v. State*, 292 Md. 405, 439 A.2d 542 (1982)]." *Simmons*, 66 Md.App. at 632–33, 505 A.2d at 578. We do not agree with the intermediate appellate court that the proffered testimony went to the defendant's diminished capacity. To the contrary, defense counsel specifically advised the court that Simmons claimed imperfect self-defense and asserted that the evidence would substantiate Simmons's subjective beliefs.[2] As we see it, the proffered testimony tended to prove an element of imperfect self-defense under *State v. Faulkner*, 301 Md. 482, 483 A.2d 759 (1984), and *Hoey v. State*, 311 Md. 473, 536 A.2d 622 (1988).[3]

The defense of imperfect self-defense was first recognized by this Court in *State v. Faulkner, supra.* In that case we held that "when evidence is presented showing the defendant's subjective belief that the use of force was necessary to prevent imminent death or serious bodily harm, the defendant is entitled to a proper instruction on imperfect self-defense." *Id.* at 500, 483 A.2d at 769. As is the case with self-defense, the defendant has the "burden of

---

**2.** At trial Simmons testified that the victim had been the aggressor. Specifically, the victim stabbed Simmons with his own knife. Simmons also testified that he was afraid of the victim and that he had been stabbed in the past by another individual. The trial judge evidently was satisfied that Simmons had met his burden of producing evidence since the jury was instructed on the law relating to imperfect self-defense.

**3.** In *Hoey v. State*, 311 Md. 473, 495 n. 5, 536 A.2d 622, 632 n. 5 (1988), we reaffirmed that portion of *Johnson* refusing to recognize diminished responsibility as a viable defense in Maryland. However, we modified *Johnson* to allow a criminal defendant to present evidence of his impaired mental condition for the limited purpose of showing the absence of *mens rea*. In light of *Hoey v. State*, Simmons is permitted to present evidence of his mental state in support of his defense of imperfect self-defense.

initially producing 'some evidence' on the issue of mitigation or self-defense ... sufficient to give rise to a jury issue.... Once the issue has been generated by the evidence, however, the State must carry the ultimate burden of persuasion beyond a reasonable doubt on that issue." *State v. Evans,* 278 Md. 197, 207–08, 362 A.2d 629, 635 (1976); *see also Cunningham v. State,* 58 Md.App. 249, 257, 473 A.2d 40, 44, *cert. denied,* 300 Md. 316, 477 A.2d 1195 (1984).

In a case where the defendant is charged with murder, the State has the burden of proving beyond a reasonable doubt that the defendant had the requisite malevolent state of mind in killing the victim, without justification, excuse, or mitigation. *See State v. Ward,* 284 Md. 189, 194, 396 A.2d 1041, 1045 (1978); *Glenn v. State,* 68 Md.App. 379, 398–405, 511 A.2d 1110, 1121–1124 (1986). Thus, when the defendant asserts imperfect self-defense against a charge of murder, the State and the accused will necessarily present conflicting evidence as to the presence or absence of a mitigating factor. If the trier of fact is convinced that the defendant honestly believed that the use of force was necessary to avoid serious bodily injury, but also finds this subjective belief to be unreasonable under the circumstances, the defendant is guilty of voluntary manslaughter, not murder. The murder charge is defeated because the defendant's subjective belief is mitigating evidence which negates the State's proposed proof of malice. However, because the jury found the defendant's subjective belief to be unreasonable, the defendant is without complete justification or excuse for the criminal act and must be convicted of voluntary manslaughter. *See Faulkner,* 301 Md. at 501, 483 A.2d at 769.

From our reading of the record, the trial judge excluded the proposed testimony on the grounds that the jury's function would be usurped if the jury were to hear the psychiatrist testify that in her opinion Simmons acted under an honest belief that self-defense was necessary when he killed the victim. In light of defense counsel's proffer that

the expert would only testify that such a subjective belief would be consistent with Simmons's psychological profile we find the trial judge's ruling too broad. A review of the principles relating to the admission of expert testimony is in order before we explain further.

■ The criminal defendant is generally permitted to introduce any evidence relevant to the asserted defense. This will be evidence which tends to establish or disprove a material fact. *See Johnson v. State,* 303 Md. 487, 527, 495 A.2d 1, 21, *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1985); *Ross v. State,* 276 Md. 664, 672, 350 A.2d 680, 686 (1976); *MacEwen v. State,* 194 Md. 492, 501, 71 A.2d 464, 468 (1950). When the evidence offered is in the form of expert testimony the admissibility of that evidence is largely left to the domain of the trial judge. *Johnson,* 303 Md. at 515, 495 A.2d at 15.

■ A determination as to the admissibility of expert testimony is based on several findings. First, the trial court must determine whether the evidence to be presented is a proper subject for expert testimony. The standard for relevance under Maryland common law is whether the jury will receive appreciable help from the expert testimony in resolving the issues presented in the case. *See State v. Allewalt,* 308 Md. 89, 101, 517 A.2d 741, 747 (1986); *Consolidated Mechanical Contractors, Inc. v. Ball,* 263 Md. 328, 338, 283 A.2d 154, 159 (1971).

Before expert testimony is admitted the court must also determine whether the proposed expert is qualified to testify by virtue of education and experience. *See Crews v. Director,* 245 Md. 174, 179, 225 A.2d 436, 439 (1967) (a psychiatrist not licensed to practice medicine in Maryland was permitted, in light of the psychiatrist's extensive professional training and experience, to opine that the appellant was a defective delinquent); *Casualty Ins. Co. v. Messenger,* 181 Md. 295, 298–99, 29 A.2d 653, 655 (1943).

■ Finally, the proposed expert testimony must be competent, that is, the expert's conclusions must be based upon

a legally sufficient factual foundation. *See State Health Dept. v. Walker,* 238 Md. 512, 520, 209 A.2d 555, 559–60 (1965), and cases cited therein. Ideally, the expert will testify from first-hand knowledge, such as that gained from a personal examination of an individual. *See Allewalt,* 308 Md. at 95, 517 A.2d at 744 (psychiatric opinion based on standard psychiatric examination which included taking a psychiatric history, making observations in a mental status examination, obtaining psychological tests, and reviewing a police report and medical examination report); *Spann v. Bees,* 23 Md.App. 313, 327 A.2d 801 (1975). Only with the basis for the expert testimony revealed will the jury be able to properly weigh the evidence.

■ Expert testimony is admissible notwithstanding that it is presented in the form of an opinion relating to an ultimate issue. This Court commented on the admissibility of this type of evidence long ago in *Balto. & Yorktown Turnpike Road Co. v. Leonhardt,* 66 Md. 70, 77–78, 5 A. 346, 351 (1886):

It is proper to lay before the jury all the facts, which are necessary to enable them to form a judgment on the matters in issue; and when the subject under investigation requires special skill and knowledge, they may be aided by the opinion of persons whose pursuits or studies or experience, have given them a familiarity with the matter in hand.

In *Leonhardt,* the Court upheld the decision of the lower court to exclude the testimony of a witness who would opine that the plaintiff was contributorily negligent. The Court agreed that the jury could adequately form a judgment on that issue from the evidence presented. *See also Belt R. Co. v. Sattler,* 100 Md. 306, 333, 59 A. 654 (1905); *Stumore v. Shaw,* 68 Md. 11, 19–20, 11 A. 360 (1887).

■ We observe that even though a trial judge has ruled to allow an expert to testify in general terms, the trial judge must engage in a separate evaluation of the admissibility of an expert opinion.

Current Maryland case law ... states that the fact that a witness' opinion addresses an ultimate issue as to which the judge or jury must reach a conclusion does not preclude automatically the witness' testifying to it. Rather, the question, as with regard to any opinion testimony, will be whether the witness' opinion is rationally based and would be helpful to the fact-finder. If both criteria are met, the opinion will be admissible. (Footnotes omitted).

L. McLain, 6 *Maryland Practice* § 704.1, at 246 (1987). The critical determination is *whether the jury will be aided by the opinion, Yudkin v. State,* 229 Md. 223, 228, 182 A.2d 798, 801 (1962), not whether the jury could draw the inference or conclusion from the testimony independent of the opinion. However, a finding by the trial judge that the jury could draw the inference or conclusion from the evidence presented without the aid of the expert's opinion would seem to have considerable weight in deciding whether the refusal to admit the expert testimony was a prejudicial abuse of discretion. *Harper v. Higgs,* 225 Md. 24, 38, 169 A.2d 661, 667 (1961). If the trial judge concludes that the opinion is admissible on these grounds, the next inquiry is whether the opinion is based on a legally sufficient factual foundation. Generally, the basis for the opinion will have been established through the preceding testimony. If the basis for the opinion is not satisfactory, the testimony will be excluded.

As is obvious from the preceding discussion, a trial judge is given broad discretion in ruling on the admissibility of expert testimony. Seldom will the decision in this regard constitute grounds for reversal. *See Johnson,* 303 Md. at 515, 495 A.2d at 15; *Stebbing v. State,* 299 Md. 331, 350, 473 A.2d 903, 912, *cert. denied,* 469 U.S. 900, 105 S.Ct. 276, 83 L.Ed.2d 212 (1984).

An evidentiary ruling similar to the ruling which we confront in this case was reviewed in *Johnson,* 303 Md. 487, 495 A.2d 1 (1985). In that case, Lawrence Johnson and Dwayne Mayers were charged with the first degree murder

of Esther Rosenblatt. Johnson desired to have his psychiatrist testify in his defense. Specifically, the psychiatrist would testify that Johnson was under the substantial influence of Mayers when the homicide took place.

The trial judge concluded that the psychiatrist could not precisely reconstruct the actions or emotions of a person on a specific date and rejected the proffered testimony. The trial judge did, however, allow the psychiatrist to testify as to the Johnson–Mayers relationship in general. The psychiatrist was also permitted to testify that Johnson had passively followed Mayers in the past and was manipulated by Mayers in many ways. *Id.* at 515, 495 A.2d at 15. On appeal this Court affirmed the trial judge's restrictive ruling regarding the proposed testimony:

> Judge Close fairly limited what he felt was improper expert testimony and permitted the remainder. The testimony admitted, if believed, was sufficient for a jury to conclude that Mayer's domination constituted a mitigating factor. The jury's failure to so find does not prove reversible error.

*Id.*

Unlike the trial judge in *Johnson,* the trial judge in this case did not exclude the proffered psychiatric testimony on the grounds that the psychiatrist could not reconstruct the actions or emotions of a person on a specific date. Rather, the trial judge was more concerned that the psychiatrist's opinion might usurp the jury's function. Moreover, the psychiatrist in the case *sub judice* was precluded from testifying as to *any* conclusions she had reached regarding the defendant's conduct by virtue of the trial judge's ruling.

The Court of Special Appeals has also reviewed evidentiary rulings relating to the admissibility of expert opinion testimony. *See Kanaras v. State,* 54 Md.App. 568, 460 A.2d 61 (1983), and *Waine v. State,* 37 Md.App. 222, 377 A.2d 509 (1977). The intermediate appellate court affirmed the trial court's ruling in both instances.

In *Kanaras,* the defendant admitted that he was present when two murders took place. He asserted, however, that any involvement on his part was *coerced* by an accomplice. To support this defense, the defendant sought to have a psychiatrist express an opinion as to whether the defendant's psychological profile was consistent or inconsistent with voluntary participation in the acts of violence. *Kanaras,* 54 Md.App. at 587, 460 A.2d at 72. The trial court rejected the proffered testimony on the grounds that the testimony amounted to an opinion on an ultimate issue. The Court of Special Appeals affirmed the exclusion of the evidence noting that it could not find an abuse of discretion where the psychiatrist had been permitted to opine that the defendant's psychological profile revealed that he was passive and easily led. *Id.* at 588, 460 A.2d at 73. *Compare United States v. Hearst,* 563 F.2d 1331, 1350–52 (9th Cir. 1977), *cert. denied,* 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978) (psychiatrists testifying on behalf of the government were permitted to express their opinions that the defendant did not take part in a bank robbery because she was in fear of her life, but rather, engaged in the illegal activity voluntarily).

The *Kanaras* court relied on *Waine v. State* as a basis for its holding. Like *Kanaras,* the defendant in *Waine* was charged with first degree murder. The defendant in *Waine,* however, denied any knowledge of the homicides and described himself as a "total passivist" incapable of violence. Psychiatric testimony was also offered to support this defense. In particular, the psychiatrist proposed to testify that violence on the part of the defendant was very unlikely and that there was a very low probability, in his opinion, that the defendant was capable of committing the homicides. *Waine,* 37 Md.App. at 243, 377 A.2d at 521. In response to this proffer the trial court ruled that the psychiatric testimony should be limited to "what he thinks the psychiatric makeup of this person is." The trial court expressly precluded any opinion as to whether the defendant was able to commit an act of violence. *Id.* The

intermediate appellate court affirmed the trial court because the psychiatrist had been permitted to testify regarding the defendant's psychological profile, i.e., peaceful disposition. The court found that testimony relating to the ultimate conclusion of whether the defendant was likely to have committed a crime of violence was properly excluded in light of the psychiatrist's admission that he could not say definitely that the defendant did not commit the crimes charged. *Id.* at 247, 377 A.2d at 523.

*Johnson, Kanaras,* and *Waine* demonstrate that the Court of Special Appeals holds admissible psychiatric testimony when it is limited to a discussion of the psychological profile of the defendant. We agree that such evidence is admissible. To the extent that the trial court's ruling precluded Dr. McDaniel from discussing the conclusions she had reached regarding Simmons's psychological profile the ruling was in error.

Our ruling is not unprecedented. A case of particular note is *People v. Wells,* 33 Cal.2d 330, 202 P.2d 53, *cert. denied,* 338 U.S. 836, 70 S.Ct. 43, 94 L.Ed. 510 (1949). In that case the defendant was convicted of a capital crime, assault with malice aforethought, while serving a life term in state prison. The defendant appealed his conviction on the ground that the trial court erroneously precluded his treating psychiatrist from testifying that it was possible that the defendant was acting under an honest belief that self-defense was necessary at the time of the alleged assault. The California Supreme Court agreed that the testimony was admissible.

> Under the circumstances the materiality of this evidence in defendant's case is patent. If he acted only under the influence of fear of bodily harm, in the belief, honest though unreasonable, that he was defending himself from such harm by the use of a necessary amount of force, then defendant, although he would not be guiltless of crime, would not have committed that particular aggravated offense with which he is charged, for the essential element of "malice aforethought" would be lacking. In

resolving this question in a close case the jury could well be materially aided by the knowledge that, in the opinion of qualified experts, the defendant's condition was such that he might readily have acted from genuine fear rather than from a desire for vengeance or from any other malicious purpose.

*Id.* at 345, 202 P.2d at 62–63. The court ultimately held that the exclusion of the evidence was harmless error, however. *Accord Braley v. State,* 741 P.2d 1061, 1075–76 (Wyo.1987) (Urbigkit, J., dissenting) (expert testimony regarding the defendant's fear should be admitted to aid the trier of fact in determining whether a claim of imperfect self-defense is viable).

In addition, expert testimony frequently is offered as to a defendant's subjective beliefs when the defendant seeks complete justification for a homicide by asserting self-defense. In some instances, the courts have suggested that the experts be permitted to testify that the defendant in fact believed that self-defense was necessary. *See, e.g., Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974). More often, however, courts admitting this form of evidence have limited the testimony to the expert's diagnosis of the defendant, characteristics of the defendant's personality disorder, and the impact which the disorder generally has on a person's perceptions and behavior. *See Phillips v. Wainwright,* 624 F.2d 585 (5th Cir.1980); *State v. Hallman,* 137 Ariz. 31, 668 P.2d 874 (1983); *People v. DeSarno,* 503 N.Y.S.2d 877, 121 A.D.2d 651 (N.Y.App.Div.1986); *State v. Fox,* 58 N.C.App. 231, 293 S.E.2d 213 (1982).

In light of the preceding discussion we find that the conviction in the case *sub judice* must be reversed. Our ruling is limited, however. While experts are permitted to testify as to the ultimate issue of fact in Maryland, we are not prepared to suggest that Dr. McDaniel should have been permitted to testify that the defendant was *in fact* acting under an honest belief that self-defense was necessary at the time of the homicide. There were no witnesses to the start of the violent altercation and psychiatric testi-

mony to the effect that Simmons was *in fact* acting under a belief that he was in mortal danger would impermissibly suggest that the victim was the aggressor. Moreover, we concur with the trial court in *Johnson*, 303 Md. at 515, 495 A.2d at 15, that a psychiatrist cannot precisely reconstruct the emotions of a person at a specific time.

On the other hand, the proffered testimony has some relevance in that consistency between the specific subjective belief testified to by Simmons and Simmons's psychological profile tends to make it more likely that Simmons in fact held that subjective belief. Had the trial judge appreciated that the second proffer fell within the limitation described in the preceding paragraph, the judge might well have exercised his discretion to admit the evidence. *See Allewalt*, 308 Md. at 109, 517 A.2d at 751. Here the judge did not purport to exclude the evidence by the exercise of discretion so that no issue of discretion is before us. The judge erroneously ruled, as a matter of law, that the evidence could not, under any circumstances, be admitted.

As the evidence sought to be admitted may have been sufficient to convince the jury that the defendant, if guilty, was guilty of a crime less than murder, its exclusion constitutes reversible error. Accordingly, Simmons must be granted a new trial.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.