636 A.2d 1009

**STATE of Maryland**

v.

**Eugene L. BURROUGHS.**

**No. 83, Sept. Term, 1992.**

Court of Appeals of Maryland.

Feb. 9, 1994.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

Claudia A. Cortese, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, ROBERT B. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned.

McAULIFFE, Judge.*

As a result of financial transactions he had with a couple for whom he served as accountant and insurance agent, Eugene L. Burroughs was convicted of multiple counts of theft by deception and of embezzlement by a fiduciary. He was sentenced to consecutive terms of 15 years imprisonment on two theft convictions, and given concurrent sentences of five years

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

each on two embezzlement convictions. On direct appeal the Court of Special Appeals, in an unreported opinion, held that the element of intent required in the offense of theft by deception is inconsistent with the element of intent required in the offense of embezzlement by a fiduciary, and that the failure of the trial judge to instruct the jury that the defendant could not be found guilty of both offenses was plain error, necessitating reversal of the judgment. We granted the State's petition for certiorari to consider the following question:

> Did the Court of Special Appeals err in holding that (a) Burroughs's convictions of theft by deception and fiduciary misappropriation were 'inconsistent,' and (b) the appropriate remedy for the supposed inconsistency was to remand the case for retrial as to all of the convictions?

## I.

The defendant is an accountant and an insurance agent. He prepared tax returns for John and Dolores Pendergrass from and after 1980, and in 1983 sold them life insurance policies written by Western Reserve Life Insurance Company, for whom the defendant was then serving as an agent. In May, 1988, the defendant persuaded the Pendergrasses to transfer their life insurance coverage to Zurich American Life Insurance Company (Zurich), for whom the defendant had become a general agent. Several months later, the defendant presented to the Pendergrasses a proposal for deposit of $20,000 into one of their existing Zurich life insurance policies. The defendant suggested that the Pendergrasses obtain the funds for this deposit through a $30,000 second trust to be placed on their home.

The recommended benefits of this plan were that the Pendergrasses would be able to deduct interest payments made on the loan and obtain tax-sheltered interest or dividends at a favorable rate from the insurance company, to be accumulated as a part of the insurance policy and available for withdrawal

(and deferred taxation) after the Pendergrasses had retired. The defendant arranged the second trust loan and collected a broker's commission for placing it with the lender. According to the Pendergrasses, the defendant also arranged for a third trust home equity loan, without their advance knowledge or approval and at their expense.

At settlement, on 23 August 1988, the Pendergrasses received a check for $28,372.50, representing the loan of $30,000 less the defendant's fee and certain settlement costs. Additional settlement costs for the loans were paid by withdrawals made against the home equity loan. The Pendergrasses endorsed this check to the defendant at his request, with the understanding that $20,000 would be paid into the Zurich insurance policy, and the balance of $8,372.50 returned to the Pendergrasses as soon as the loan check was "processed." At the time he received the check from the Pendergrasses, the defendant completed a preprinted Zurich conditional receipt for $28,372.50, which he signed as agent for Zurich and delivered to the Pendergrasses. The defendant did not pay the $20,000 to Zurich, nor did he return the balance to the Pendergrasses. Instead, he negotiated the Pendergrasses' settlement check to another party.

On 6 October 1988, before the Pendergrasses learned that the defendant had not paid the money to Zurich, but after they had become concerned about the absence of any communication from Zurich confirming receipt of the funds, the failure of the defendant to return the balance due them, and the expenses the defendant had caused them by placing an unauthorized third-trust loan, they met with him. The defendant told the Pendergrasses at that meeting that if they would give him an additional check for $20,000 for a period of one month, he would return that $20,000 together with an amount sufficient to pay off the third trust—approximately $3,000. The Pendergrasses gave the defendant the additional $20,000. The record does not disclose what the defendant did with that money, but he did not return it and he did not pay the

additional funds he had promised.[1]

The defendant was convicted on Count 1 of an indictment filed in the Circuit Court for Prince George's County, which charged him with theft by deception, a violation of Article 27, § 342(b) of the Maryland Code (1957, 1987 Repl.Vol.), in connection with the $28,372.50 taken on 29 August 1988. He was also convicted of: Count 4, which charged the same offense for the taking of the additional $20,000 on 6 October 1988; and Counts 3 and 6 which charged embezzlement by a fiduciary in violation of Art. 27, § 132 of the Code in connection with the same 29 August and 6 October defalcations.[2]

## II.

The first question we address is whether the verdicts of guilty of theft by deception (Art. 27, § 342(b)) and of embezzlement by fiduciary (Art. 27, § 132) are inconsistent under the facts of this case, so that the defendant could not lawfully be convicted of both for the same conduct. Section 342(b) of Art. 27 is a part of the consolidated theft statute first enacted by ch. 849 of the Acts of 1978. Section 342 creates a single offense of theft and sets forth alternative elements that may comprise the offense. As we stated in *Jones v. State,* 303 Md. 323, 333, 493 A.2d 1062 (1985), the legislature enacted that statute to "create a single statutory crime encompassing various common law distinctions between particular forms of larceny." Subsection (a) of § 342 is very broad in scope. It provides:

(a) *Obtaining or exerting unauthorized control.*—A person commits the offense of theft when he willfully or know-

---

**1.** The record reflects that the defendant did make occasional payments of money to the Pendergrasses, some or all of which was intended to repay money he had taken from them. Also, although Zurich never received any of the funds, it paid the Pendergrasses the $28,372.50 originally received by the defendant and for which the defendant had given Zurich's receipt.

**2.** The defendant was also found guilty of offenses charged in the second and fifth counts of the indictments, but the trial judge found these convictions merged and neither party challenges that finding.

ingly obtains control which is unauthorized or exerts control which is unauthorized over property of the owner, and:

(1) Has the purpose of depriving the owner of the property; or

(2) Willfully or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or

(3) Uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

Subsection (b), under which the defendant was charged, provides:

(b) *Obtaining control by deception.*—A person commits the offense of theft when he willfully or knowingly uses deception to obtain and does obtain control over property of the owner, and;

(1) Has the purpose of depriving the owner of the property; or

(2) Willfully or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or

(3) Uses, conceals, or abandons the property knowing such use, concealment, or abandonment probably will deprive the owner of the property.

Subsection (c) deals generally with criminal possession of stolen property. Subsection (d) proscribes certain conduct with respect to lost, mislaid, or mistakenly delivered property, and subsection (e) deals with the obtaining of services by deception.

Section 341 of Art. 27 makes clear the intent of the legislature in enacting the consolidated theft statute, and the broad reach of that statute. It provides, in pertinent part:

Conduct designated as theft in this subheading constitutes a single crime embracing, among others, the separate crimes heretofore known as larceny, larceny by trick, larceny after trust, embezzlement, false pretenses, shoplifting, and receiving stolen property. . . .

The offense of which the defendant was convicted in Counts 3 and 6 of the indictment is a statutory form of embezzlement involving fraudulent misappropriation by fiduciaries, and is codified at Art. 27, § 132. That section provides:

If any executor, administrator, guardian, committee, trustee, receiver or any fiduciary shall fraudulently and wilfully appropriate to any use and purpose not in the due and lawful execution of his trust, any money or any other thing of value which may come into his hands as such executor, administrator, guardian, committee, trustee, receiver, or in any other fiduciary capacity, or secrete it with a fraudulent intent to appropriate it to such use or purpose, he shall be deemed guilty of embezzlement, and shall be punished upon conviction by imprisonment in the penitentiary for not less than one year nor more than five years.

In holding that the offense of embezzlement by a fiduciary is inconsistent with the offense of theft proscribed by § 342, the Court of Special Appeals relied on its earlier decision in *Mattingly v. State,* 89 Md.App. 187, 597 A.2d 1027 (1991), *cert. denied,* 326 Md. 177, 604 A.2d 444, *cert. denied,* —— U.S. ——, 113 S.Ct. 211, 121 L.Ed.2d 151 (1992). The intermediate appellate court did not hold in *Mattingly* that the two offenses are inherently inconsistent. Rather, the court reasoned from the evidence that was before the jury, the instructions given, and the verdicts rendered, that the jury had found the defendant knew he was not entitled to the money when he received it, and concluded:

Given that finding, Mattingly could not be guilty of fraudulent misappropriation by a fiduciary, because he, in fact, had stolen the checks. His status as a thief preempts his status as a fiduciary. In the instant case, Mattingly's crime consisted of a single act of taking money at a particular point in time. Thus, we find that Mattingly is only guilty of the one count of theft.

*Id.* at 200, 597 A.2d 1027.

In the instant case, the Court of Special Appeals concluded that the verdicts were inconsistent because in order

to find the defendant guilty of the offense of theft charged [3] the jury was required to find that the defendant obtained the money by deception, and if that were so he could not have received the money as a fiduciary.

We find nothing in the history of § 132 that suggests a fiduciary cannot be guilty of a violation of that section if the fiduciary uses deception to cause another to pay the money to the fiduciary, and the fiduciary has the fraudulent intent to convert the property to his own use at the time it is received. The gravamen of the offense is that money or other property was entrusted to someone who stood in a fiduciary relationship with the owner, and the fiduciary fraudulently and wilfully appropriated the property to a use other than that intended. The statute was enacted to ensure that there could be conviction and punishment for one who wrongfully converted property of another where there was no trespass involved in the original obtaining of the property. The evidence was sufficient in this case to show that the defendant enjoyed a fiduciary relationship with the Pendergrasses, and that he occupied that fiduciary position when they entrusted the money to him. It is difficult to divine from the language or the history of § 132 a legislative intent that a fiduciary receiving the funds with the present intent to convert them to his own use would not be guilty of a violation of that section.

---

3. For reasons not clear from this record, the State did not use the statutory form of indictment set forth in Art. 27, § 344. Use of that form of indictment permits proof of theft by "evidence that it was committed in any manner that would be theft under this subheading...." Art. 27, § 341. Instead, the State restricted its options of proof by specifically charging only a violation of § 342(b). *See Beckwith v. State*, 320 Md. 410, 414–15, 578 A.2d 220, (1990) (where State may charge a violation of two subsections by referring only to the general section in the charging document, it loses that option by specifying one of the two subsections). Although subsection 341 permits, under some circumstances, proof of a manner of commission of theft different from that specified in the charging document, we do not believe that section would permit a conviction under the provisions of § 342(a) in this case, where the State did not generally charge a violation of § 342 and the charges of theft were tried and presented to the jury as theft by deception as described in § 342(b).

■ There is older authority, however, that where a defendant possesses a felonious intent to steal at the time of receipt of the goods, a conviction for embezzlement will not lie. *See, e.g.,* Clark & Marshall, *A Treatise on the Law of Crimes,* § 12.21 at 913–14 (7th ed., 1967). A return to the era of arcane distinctions between larceny and embezzlement that once existed is hardly an inviting prospect, and would seem to be inconsistent with the intent of the legislature expressed in the enactment of the consolidated theft statute. We need not resolve this question, however, because under the facts of this case, the outcome will be the same whether the verdicts are considered to be inconsistent or consistent.

### III.

■ If the verdicts are inconsistent, as the defendant contends, the error is rectified by vacating the sentence and conviction of the embezzlement counts. A review of the instructions given by the trial judge discloses that the verdicts rendered in this case were entirely consistent with the instructions. The only prejudice to the defendant, if we assume the presence of an inconsistency, would be failure of the trial judge to instruct the jury that if they found the defendant guilty of theft by deception they should not consider the charges under § 132. As we pointed out in *State v. Hawkins,* 326 Md. 270, 286–291, 604 A.2d 489 (1992), this is an error readily cured by vacating the conviction and sentence for violations of § 132.

In *Hawkins,* the instructions given by the trial judge permitted the jury to make consistent findings of guilt of the crimes of murder and of accessory after the fact to murder. Even though the common law as it existed at the time the offenses were committed in *Hawkins* did not permit a defendant to be found guilty of murder and of being an accessory after the fact to the same murder, we held that the failure to so instruct the jury did not taint the verdict that the defendant was guilty of murder, and that any prejudice to the defendant could be corrected by vacating the conviction of accessory after the fact to murder. *Id.* at 290–91, 604 A.2d 489.

The rationale of *Hawkins* is directly applicable to the facts of this case. The findings of guilty of theft by deception and of embezzlement by a fiduciary are entirely consistent with the evidence in the case and with the instructions given by the trial judge. The defendant did not suggest that verdicts of guilty of the two offenses would be inconsistent, and did not request an instruction to that effect. Accordingly, if there is an inconsistency in the verdicts, the remedy is to vacate the convictions and sentences for embezzlement.

## IV.

If one can be guilty of embezzlement by a fiduciary even though harboring an intent to misappropriate the goods at the time they are received, and there is therefore no inconsistency between the verdicts, the defendant is nevertheless entitled to have the convictions and sentences for embezzlement vacated because of the doctrine of merger by legislative intent.

The two offenses that we compare are not the same offenses for double jeopardy purposes. Proof of that form of theft proscribed by § 342(b) requires proof that the defendant wilfully or knowingly used deception to obtain control over the property, but proof of that element is not required to establish embezzlement by a fiduciary. On the other hand, embezzlement by a fiduciary cannot be proved without a showing that the defendant was a fiduciary when he received the property, and that element is not required to prove theft by deception. Because each offense requires proof of an element that the other does not, they are not the same offenses for double jeopardy purposes. *Williams v. State,* 323 Md. 312, 316–17, 593 A.2d 671 (1991); *Randall Book Corp. v. State,* 316 Md. 315, 323, 558 A.2d 715 (1989).

We have made clear, however, "that the required evidence test, while the normal standard, is not the exclusive standard for determining merger of offenses." *State v. Jenkins,* 307 Md. 501, 518, 515 A.2d 465 (1986). We said in *Brooks v. State,* 284 Md. 416, 423, 397 A.2d 596 (1979):

[E]ven though offenses may be separate and distinct under the required evidence test, courts occasionally find as a matter of statutory interpretation that the Legislature did not intend, under the circumstances involved, that a person could be convicted of two particular offenses growing out of the same act or transaction.

We have also noted that "[d]oubts in this area of the law are resolved not only in favor of lenity, but in favor of rational and reasonable probabilities of legislative intent where such intent is left unclear...." *State v. Jenkins, supra,* 307 Md. at 519, 515 A.2d 465 quoting *Ingram v. United States,* 353 F.2d 872, 875 (D.C.Cir.1965).

A review of the relevant legislative history discloses that the legislature initially proposed to repeal § 132 upon adoption of the consolidated theft statute. See ch. 849 of the Acts of 1978. Representatives of the Office of the Attorney General of Maryland suggested, however, that the consolidated theft statute might not be sufficiently broad to encompass crimes theretofore proscribed by § 132.

By letter of 15 February 1979 to Chairman Joseph E. Owens of the House Judiciary Committee,[4] Deborah E. Jennings (Nalls), then Chief Counsel for Investigations in the Office of the Attorney General, offered explanations for various changes in the consolidated theft statute that had been suggested by the Attorney General's office. The writer noted that "the new theft statute repeals Art. 27, § 132" and opined that "[t]here is no comparable crime in the new theft statute." The Attorney General's office suggested restructuring the consolidated theft statute to add a new subsection which would distinguish "the custodial thefts from the larcenous ones." In a separate section of the letter, the writer suggested that the consolidated theft statute might not be sufficiently broad to embrace criminal conversions of property by those who lawfully obtained custody. She said,

---

4. This letter forms a part of the legislative history file of ch. 687 of the Acts of 1979, Department of Legislation Reference, Annapolis, Maryland.

Although we suspect that 'exerts control which is unauthorized' was meant to cover conversions of property in the custody of another, we think it is very risky to leave to the appellate court the decision of whether the traditional nontrespassory crimes continue to exist after this statute.

The legislature did not accept the Attorney General's recommendation for wholesale revision of the statute. By ch. 687 of the Acts of 1979, the legislature did, however, broaden the definition of "exerts control" to include the words "appropriating to one's own use," and at the same time, reenacted § 132. It seems apparent from our review of the legislative history that the General Assembly believed § 342(a) to be sufficiently broad to embrace embezzlement, and that it reenacted § 132 only as a fail-safe measure, so that there would be no gap in the coverage of the criminal law if the Attorney General's fears were well founded. In fact, § 342(a) is sufficiently to broad to embrace within its proscription the various forms of embezzlement formerly addressed by specific statutes, including § 132, and the precautionary reenactment of § 132 was unnecessary. In the light of this history, it becomes clear that the legislature did not intend cumulative punishment for a single course of conduct that constituted violations of both sections 342 and 132. Thus, the doctrine of merger by legislative intent would dictate that the convictions of § 132 merge into the convictions of § 342. *See State v. Jenkins, supra,* 307 Md. at 521, 515 A.2d 465 ("where there is merger by legislative intent, the offense carrying the lesser maximum penalty merges into the offense carrying the greater penalty").

## V.

By his appeal to the Court of Special Appeals, the defendant raised other issues that were not reached by the intermediate appellate court. Accordingly, we shall remand the case for consideration of the additional questions. If the defendant does not prevail on those issues, the Court of Special Appeals shall affirm the judgments of conviction for theft, and vacate the sentences and thus the judgments of conviction for embezzlement by a fiduciary.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO DATE IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID ONE-HALF BY EUGENE L. BURROUGHS AND ONE-HALF BY PRINCE GEORGE'S COUNTY.